UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

YVONNE CATHLEEN THOMPSON,

                       Plaintiff,

      v.                                              **DECISION AND ORDER**
                                                            12-CV-111S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                       Defendant.

      1.      Plaintiff, Yvonne Thompson, challenges an Administrative Law Judge's ("ALJ") determination that she was not disabled within the meaning of the Social Security Act ("the Act"). Thompson alleges that she was disabled from December 1, 2006 to July 15, 2009 due to: right elbow pain from a motor vehicle accident in 1996 which required four subsequent surgeries, and bipolar disorder. She maintains that these impairments rendered her unable to work, and asserts that she is entitled to disability insurance benefits under the Act for that closed period of disability.

      2.      Thompson filed an application for benefits under Title II of the Act on September 15, 2008, alleging an inability to work since December 1, 2006. The Commissioner of Social Security ("Commissioner") denied Thompson's initial application and, as a result, she requested an administrative hearing. A hearing was held on October 19, 2010 before Administrative Law Judge ("ALJ") Robert T. Harvey, at which Thompson appeared with counsel and testified. The ALJ considered the case *de novo*, and on November 8, 2010, issued a decision denying Thompson's application for benefits. Thompson filed a request for review with the Appeals Council, but the Council denied her

1

request on December 7, 2011.  Thompson filed the current civil action on February 8, 2012, challenging the Commissioner's final decision.[1]

3. On July 5, 2012, the Commissioner and Thompson each filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Briefing on the motions concluded on August 6, 2012, at which time this Court took the motions under advisement without oral argument.  For the reasons set forth below, the Commissioner's motion is granted, and Thompson's motion is denied.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla"; it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen,

---

[1] The ALJ's March 25, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v.

Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Thompson did not engage in substantial gainful activity during the closed period from December 1, 2006 to July 15, 2009 (R. at 12);[2] (2) during that time, her bipolar disorder and right elbow pain were severe impairments within the meaning of the Act (R. at 12); (3) these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. at 12); (4) during the requested time period, Thompson retained the residual functional capacity to perform light work with certain additional limitations, including lifting of no more that five pounds with her right arm (R. at 14); and (5) during that time, she was able to perform her past relevant work as a cosmetology instructor and salon manager (R. at 19). Ultimately, the ALJ concluded that Thompson was not under a disability as defined by the Act. (R. at 20.)

10. Thompson maintains the ALJ committed legal error and that his decision is

---

[2] Citations to the underlying administrative record are designated as "R."

not supported by substantial evidence. Her arguments are addressed in the order they arise in the sequential process.

11. Thompson first contends the ALJ erred at step two by failing to consider whether her obesity was a severe impairment. The Court notes that Thompson and her counsel did not assert obesity as a disabling condition in her application for benefits, at her hearing, or in her brief to the Appeals Council. (R. 25-62, 132, 192-99.) Nevertheless, an ALJ may have a duty to consider the impact of a claimant's obesity even where he or she does not identify it as a limiting condition.

At step two, obesity can constitute a "severe impairment" when "alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." SSR 02-1p, 2002 LEXIS 1, at *11. Such obesity must be more than a slight abnormality, and have more than a minimal effect on a claimant's ability to perform basic work activities. Id. Where the record contains evidence of limiting effects from a claimant's obesity, the ALJ must consider the impact of obesity together with any other impairments. Sotack v. Astrue, 2009 U.S. Dist. LEXIS 102794, at *11 (W.D.N.Y. Nov. 4, 2009). Conversely, the ALJ's obligation to discuss obesity, either alone or in combination with other impairments, diminishes where evidence in the record indicates the claimant's treating or examining sources did not consider obesity as a significant factor in relation to the ability to perform work related activities. Farnham v. Astrue, 832 F. Supp. 2d 243, 262 (W.D.N.Y. 2011) (citations omitted).

In this case, the record establishes that Thompson was obese during the alleged period of disability. Well before her disability onset date, Thompson, who is 5'-6" tall,

weighed 310 pounds and was considered morbidly obese. (R. 234-35.) She had gastric bypass surgery in June 2005. (R. 235.) Three months post-bypass, she weighed 253 pounds. (R. 235.) Nine month after surgery, her treating physician, Dr. Wallens, noted that Thompson had already lost a significant amount of weight, was feeling quite well, and was asymptomatic. (R. 238.) It is not entirely clear when her weight loss leveled out, but early in her alleged period of disability, it was noted that Thompson had lost more than 100 pounds. (R. 242.) She maintained her weight at approximately 210 pounds or less throughout the alleged disability period (R. 242, 339, 400, 42). While it is clear that Thompson remained mildly obese during the relevant period, the record is devoid of any suggestion that her weight negatively impacted her ability to work. Neither her treating sources nor the examining sources attribute any symptoms, limitations, or exacerbation of other impairments to Thompson's weight. In light of this record, the ALJ had no duty to discuss Thompson's obesity as an impairment or a contributing factor.

12.  Thompson further claims the ALJ erred at step four because he did not expressly assess "the effect obesity ha[d] upon [her] ability to perform routine movement and necessary physical activity within the work environment." 2002 SSR LEXIS 1, at *16-17. As noted at step two, "there is no obligation on an ALJ to single out a claimant's obesity for discussion in all cases." Cruz v. Barnhart, No. 04-CV-9011, 2006 U.S. Dist. LEXIS 26914, 2006 WL 1228581, at *9 (S.D.N.Y. May 8, 2006). Moreover,"[w]hen an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions." Id.

In this case, the consultative examiner, Dr. Bender, did not find any limitations related to Thompson's obesity; specifically, he noted no limitations in walking, bending,

6

climbing, sitting, squatting or kneeling. Dr. Bender further noted that Thompson's hand and finger dexterity were intact.[3] (R. 400-402.) Her treating physician, Dr. Wallens, described her as asymptomatic post gastric bypass, and he did not thereafter attribute any limitations, in whole or in part, to her weight. In discussing Thompson's residual functional capacity, the ALJ noted that "[s]he had lost over 100 pounds in weight and was doing well following gastric bypass surgery." (R. 15.) While this reference is somewhat cursory, it is sufficient to indicate the ALJ gave consideration to Thompson's weight in his RFC assessment. There was no need for further discussion where there is no record evidence that obesity negatively affected her functional capacity during the alleged disability period. As such, the Court finds no reversible error.

13. Next, Thompson argues that the ALJ failed, at step four, to properly assess the credibility of her hearing testimony. There is a two-step process an ALJ must follow to evaluate a claimant's complaints of pain or limitations:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the individual's pain or other symptoms . . . .
>
> Second, . . . the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities . . . .

1996 SSR LEXIS 4, at *5-6. If the claimant's statements suggest a greater severity of impairment than can be shown by objective medical evidence, the ALJ must consider the following factors making a determination of the claimant's credibility:

1. [Claimant's] daily activities;

---

[3] While Thompson now maintains that "obesity can affect a claimant's manual dexterity" (Docket No. 8 at 16), she stops short of arguing that this record would support such a conclusion in her case.

> 2. The location, duration, frequency and intensity of [claimant's] pain or other symptoms;
>
> 3. Precipitating and aggravating factors;
>
> 4. The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;
>
> 5. Treatment, other than medication [claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;
>
> 6. Any measure [claimant] use[s] or ha[s] used to relieve ... pain or other symptoms;
>
> 7. Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).

The Court first notes that the ALJ largely accepted Thompson's testimony; he agreed that her medically determinable impairments could reasonably be expected to cause the symptoms she complained of. (R. 15.) However, he did not fully credit her testimony as to the intensity, persistence and limiting effects of those symptoms. Thompson maintains the ALJ's assessment in this regard—specifically with respect to her activities of daily living—is not supported by substantial evidence.

There is no dispute that the ALJ's assessment of Thompson's daily activities differs from what Thompson described at her hearing. However, the ALJ examined not just the hearing testimony, but also the daily activities questionnaire Thompson completed during her alleged period of disability, and the records from her treating and examining physicians during that same period. Thompson's hearing testimony as to the nature and frequency of her symptoms and their limiting effects is, in several respects, inconsistent with her earlier statements and the medical records. (Compare 48-52 and R. 157-62, 238-51, 377,

400.) "It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Having reviewed the record, the Court finds no reversible error. The ALJ's findings, including his decision to discount Thompson's testimony as to the impact of her symptoms on daily activities, are supported by substantial record evidence.

14. Next, Thompson maintains the ALJ erred at step four because his hypothetical question to the vocational expert ("VE") did not address all of her limitations. She claims the ALJ offered a "a vague hypothetical in which the individual [though limited in lifting no more than five pounds with her right arm] is unlimited in . . . her able [sic] to lift or carry with the left hand." This, she contends, is contrary to the ALJ's conclusion that she is, in fact, limited to occasionally lifting 20 pounds and frequently lifting 10 pounds. (Docket No. 8 at 10-11.) Her argument is without merit.

The ALJ specifically questioned the VE about Thompson's ability to perform her past relevant work as a salon manager, cosmetology instructor, or hairstylist. Before the ALJ presented his hypotheticals, the VE defined each of these positions as work requiring a light exertional level. (R. 58.) "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). In light of this foundation, there was no need for the ALJ to repeat exertional limitations the VE already had established for Thompson's past work.

15. Finally, Thompson maintains the ALJ's finding that she could perform her past relevant work conflicts with the Dictionary of Occupational Titles ("DOT") because she is more limited in lifting with her right arm than is assumed for "light work" and for those job titles in general. This argument, too, is without merit.

The ALJ specifically asked the VE if someone with the limitations described in his hypothetical could perform any of Thompson's past work *as she performed it*. The VE opined that such a person could perform Thompson's past work as instructor and salon manager. (R. 46.) Because Thompson testified that she did not lift any more than five pounds at either of these jobs, the ALJ's conclusion that she could perform past relevant work is supported by substantial evidence. Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) ("We know of no circuits that have found a 'conflict' in a discrepancy between, on the one hand, the expert's description of the job that the claimant actually performed, and the Dictionary's description of the job as it is performed in the national economy. . . . Whereas the Dictionary describes jobs as they are generally performed, an expert is often called upon to explain the requirements of particular jobs, and as such, his deviations from the Dictionary in such testimony do not actually 'conflict' with the Dictionary.")

16. Accordingly, for the reasons stated above and having found that ALJ Harvey's RFC determination and finding of "not disabled" were supported by substantial evidence, the Commissioner's motion is granted and Plaintiff's motion is denied.

****

IT HEREBY IS ORDERED that the Commissioner's Motion for Judgment on the Pleadings (Docket No. 5) is GRANTED.

FURTHER that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 7) is DENIED.

FURTHER, that the Clerk of the Court shall close this case.

SO ORDERED.

Dated: January 20, 2013
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
Chief Judge
United States District Court